**DEPARTMENT OF the TREASURY, U.S. CUSTOMS SERVICE, WASHINGTON, D.C., Petitioner,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent, National Treasury Employees Union, Intervenor.**

**No. 83–1355.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 23, 1984.

Decided June 7, 1985.

Allan L. Martin, Atty., Dept. of the Treasury, Jordan A. Luke, Asst. Gen. Counsel, Dept. of the Treasury, and Gary B. Landsman, Asst. Chief Counsel, U.S. Customs Service, Washington, D.C., were on the brief, for petitioner.

Steven H. Svartz, Deputy Sol., Federal Labor Relations Authority, Washington, D.C., with whom Ruth E. Peters, Sol., William E. Persina, and Matthew J.

Wheeler, Attys., Federal Labor Relations Authority, Washington, D.C., were on the brief, for respondent.

Lawrence K.G. Poole, Atlanta, Ga., with whom Lois G. Williams and Kerry L. Adams, Washington, D.C., were on the brief, for intervenor. Robert M. Tobias, Washington, D.C., also entered an appearance for intervenor.

Before EDWARDS, SCALIA and STARR, Circuit Judges.

Opinion for the Court filed by Circuit Judge SCALIA.

SCALIA, Circuit Judge:

Petitioner, Department of the Treasury, United States Customs Service, seeks review of a decision by the Federal Labor Relations Authority ordering it to negotiate over a proposal by the National Treasury Employees Union which would establish a set of measuring devices as part of crediting plans for merit promotions in bargaining-unit positions. Treasury objects to the order on grounds that the Union proposal is not bargainable because it interferes with management rights reserved by 5 U.S.C. § 7106(a) (1982) and because it is inconsistent with government-wide regulations, see 5 U.S.C. § 7117(a).

I

The Customs Service's selection of a particular individual for a merit promotion to fill a bargaining-unit position is the last step of a five-stage process. (1) A "selecting official" decides whether to fill the position through merit promotion or alternate staffing methods. (2) If merit promotion is selected, Treasury issues a vacancy announcement describing the job and its requirements. (3) Applicants are screened by the agency personnel office, which determines whether they are "minimally qualified" for the position. This determination is made pursuant to basic eligibility requirements established by the Office of Personnel Management and Treasury. (4) A board selected by management evaluates the relative qualifications of the remaining candidates and assigns them ratings. The five candidates with the highest scores are put on the "Best Qualified List." (5) The selecting official may then promote any of the candidates on that list or fill the vacancy from some other appropriate source, e.g., persons eligible for handicapped or veteran readjustment appointments.

Agencies use various methods for conducting the comparative evaluation of step four. One is a "crediting plan," composed of a set of "evaluation criteria" (reflecting the specific knowledge, skills, and abilities required for the position) and measurement devices for determining the extent to which candidates meet the criteria. The dispute in this case centers on a set of measurement devices to be used in crediting plans for merit promotions in Customs bargaining-unit positions, which the Union proposed in the course of collective-bargaining negotiations.[1] The proposal specifies the factors a merit promotions board must consider and the number of points it may award for each: experience (1–8 points), supervisory evaluations of performance (1–6 points), education (1–4 points), awards (1–4 points), and miscellaneous factors (1–3 points). It also determines how many points a board may award for specific levels of each factor. Education above the high school level, for example, earns 4 points for a master's degree, 3 points for a bachelor's degree, 2 points for 90 semester hours and 1 point for 30–89 semester hours.

Treasury refused to negotiate over the proposal on grounds that 5 U.S.C. §§ 7106 and 7117(a) make proposals that interfere with substantive managerial rights. or are inconsistent with government-wide regulations nonbargainable. On the Union's petition for review of this refusal, the FLRA required Treasury to negotiate. Treasury

---

1. Treasury contends, contrary to this description, that the proposal not only affects measurement devices but in fact constrains management's ability to select criteria. Without deciding the issue, in this opinion we adopt for the sake of argument the FLRA's characterization of the proposal.

appeals this ruling under 5 U.S.C. § 7123(a).

## II

Several crucial issues in this case were fully litigated between these parties in the Second Circuit and resolved adversely to the FLRA while this appeal was pending. *See United States Customs Service, Region II v. FLRA*, 739 F.2d 829 (2d Cir. 1984). The FLRA order at issue in that case involved an NTEU-proposed plan substantially identical, insofar as concerns conflict with management rights under 5 U.S.C. § 7106(a), to the one before us—as the FLRA itself found. *See National Treasury Employees Union and Department of the Treasury, United States Customs Service, Washington, D.C.*, 11 F.L.R.A. 247, 248 (1983). Mutual defensive collateral estoppel applies against the United States. *See United States v. Stauffer Chemical Co.*, 464 U.S. 165, 104 S.Ct. 575, 78 L.Ed.2d 388 (1984). Treasury might, therefore, have argued that the FLRA is precluded from relitigating those issues here. It did not, however, but limited itself to calling our attention to the Second Circuit's decision as supplemental authority under Fed.R.App.P. 28(j). Because Treasury has thereby waived any claim of issue preclusion it might have, we must reach the merits of this petition.

In doing so, however, we consider first the reasoning of the Second Circuit opinion, which can be persuasive even though its conclusion is not binding. The Second Circuit set aside the FLRA order directing Treasury to bargain over the crediting plan on grounds that to do so would interfere "with management's reserved right to determine the personnel who will conduct agency operations," 739 F.2d at 833.[2] The court was evidently referring to 5 U.S.C. § 7106(a)(2)(B)—or perhaps, as earlier discussion in the opinion would suggest, to 5 U.S.C. § 7106(a)(2)(C) *as illuminated by* § 7106(a)(2)(B).[3] It is not clear to us that such a mode of analysis is sound. Management's reserved rights in the merit promotion context are specifically defined in 5 U.S.C. § 7106(a)(2)(C): to make selections for appointments from properly ranked candidates or from any other appropriate source. Because the more specific provision governs the more general, *see, e.g., FTC v. Manager, Retail Credit Co., Miami Branch*, 515 F.2d 988, 993–94 (D.C.Cir. 1975); and because it would impermissibly reduce the appointment-selection provision to surplusage if we interpret it as no more than an obvious example of the more broadly defined right to "determine the personnel by which agency operations shall be conducted," *see, e.g., National Insulation Transportation Committee v. ICC,* 683 F.2d 533, 537 (D.C.Cir.1982); it seems to us that proper analysis of the application of § 7106(a) to this case should proceed under § 7106(a)(2)(C) alone, and may quite possibly lead to the conclusion that the management prerogative to select from among "properly ranked" candidates leaves for negotiation—within a certain range of reasonableness—the proper method of ranking.

---

**2.** We do not pause to consider the Second Circuit's alternative ground, pertaining to the agency's application of the so-called "acting at all" standard. *See* 739 F.2d at 831–32. Its views on that point are contrary to the law of this Circuit. *See Department of Defense, Army-Air Force Exchange Service v. FLRA*, 659 F.2d 1140, 1152–57 (D.C.Cir.1981).

**3.** 5 U.S.C. § 7106 provides:

(a) Subject to subsection (b) of this section, nothing in this chapter shall affect the authority of any management official of any agency—

. . . .

(2) in accordance with applicable laws—

(A) to hire . . . employees in the agency . . .;

(B) . . . to determine the personnel by which agency operations shall be conducted;

(C) with respect to filling positions, to make selections for appointments from—

(i) among properly ranked and certified candidates for promotion; or

(ii) any other appropriate source. . . .

(b) Nothing in this section shall preclude any agency and any labor organization from negotiating—

. . . .

(2) procedures which management officials of the agency will observe in exercising any authority under this section. . . .

■ ·We need not pursue that analysis, however, since we think a clearer basis for deciding the present case is at hand. 5 U.S.C. § 7117(a)(1) excludes the duty to bargain with regard to proposals that are "inconsistent with ... any Government-wide rule or regulation." Treasury urges that the proposal in dispute here conflicts with several government-wide regulations, including the following:

(a) ... Each employment practice of the Federal Government generally, and of individual agencies, shall be based on a job analysis to identify:

(1) The basic duties and responsibilities;

(2) The knowledges [*sic* ], skills, and abilities required to perform the duties and responsibilities; and

(3) The factors that are important in evaluating candidates. The job analysis may cover a single position or group of positions, or an occupation or group of occupations, having common characteristics.

5 C.F.R. § 300.103(a) (1983). Because the union proposal would apply to all bargaining-unit positions in the agency, including positions as diverse as secretary, mail handler, pilot, and customs inspector, Treasury argues that it is not and cannot possibly be based on analysis of a group of positions or occupations having common characteristics.

■ The FLRA responds that Treasury failed to make this argument below, and that under 5 U.S.C. § 7123(c) "[n]o objection that has not been urged before the Authority ... shall be considered by the court...." It is true that Treasury did not quote or refer by number to 5 C.F.R. § 300.103 in its brief before the FLRA; it did, however, raise the issue of the incompatibility of the proposal with the requirement for job analysis. *See United States Customs Service and National Treasury Employees Union*, FLRA No. 0–NG–250, Statement of Position on Behalf of the Department of the Treasury, United States Customs Service, at 5–6. That reference might be considered inadequate if the requirement for job analysis were an ob-

scure, technical provision of civil service law that FLRA might be unaware of. In fact, however, it is well known, being the first of only three "Basic Requirements" laid down by the Office of Personnel Management regarding employment practices—preceding even the requirements of relevance and equal employment opportunity. The argument was presented to the Authority with sufficient clarity to make it proper for consideration on review.

The proposal before us clearly involves an "employment practice" under 5 C.F.R. § 300.103, since that term is defined in 5 C.F.R. § 300.101 to include "measurement instruments." The FLRA does not assert that the proposal in question is actually based on job analyses of all or related groups of the some 11,000 diverse positions to which it applies. Rather, it argues that job analyses *could* be carried out in conformity with the proposal, and that there is no reason to believe that any job analysis would find the proposal unrelated to job requirements. But the mere permissibility of an *ex post facto* job analysis, and the mere absence of a showing that such an analysis, if conducted, would invalidate the previously adopted measurement devices, falls far short of fulfilling the requirement that those devices "be *based* on a job analysis to identify ... [t]he factors that are important in evaluating candidates." 5 C.F.R. § 300.103(a) (emphasis added).

Although the Authority's opinion did not address the requirement that the proposed employment practice be based on job analysis, it did consider the related requirement that all actions under a promotion plan be "based solely on job-related criteria." Federal Personnel Manual, ch. 335, subch. 1–4. On the basis of that provision, it held the proposal non-negotiable insofar as it would require credit for *non-job-related* education and experience. *See* 11 F.L.R.A. at 250. This limitation does not suffice to save the remainder. Exclusion of non-job-related education and experience is not the same as a job analysis before the measurement scheme is adopted, and cannot reasonably be said to assure the same results.

The latter is apparent from the fact that, even as so limited, the proposal establishes the number of points to be awarded for each level of the various factors *without any reference to the demands of specific occupations.* It requires, for example, that boards grant the same number of points for a (job-related) bachelor's degree in *all* positions; and that they grant the same number of points for a sustained superior performance award as for a bachelor's degree in all positions.

For the reasons stated, the FLRA's decision is contrary to law, 5 U.S.C. § 7106(a)(2)(A), and must be

*Vacated.*