**NATIONAL FEDERATION OF FEDERAL EMPLOYEES,** Petitioner,

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent.**

No. 85–1260.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 10, 1986.

Decided May 2, 1986.

Bruce P. Heppen, Washington, D.C., with whom H. Stephan Gordon, was on brief, for petitioner.

Jill A. Griffin, Federal Labor Relations Authority, with whom Ruth E. Peters, Solicitor, Steven H. Svartz, Deputy Solicitor, and William E. Persina, Associate Solicitor,

---

Federal Labor Relations Authority, Washington, D.C., were on brief, for respondent.

Before MIKVA, GINSBURG and SILBERMAN, Circuit Judges.

Opinion for the Court filed by Circuit Judge MIKVA.

Dissenting opinion filed by Circuit Judge SILBERMAN.

MIKVA, Circuit Judge:

The National Federation of Federal Employees (NFFE) petitions for review of the Federal Labor Relations Authority's dismissal of a complaint alleging an unfair labor practice. Because we find that the Authority improperly ordered dismissal without addressing the issues presented in the complaint, we reverse the order of dismissal and remand to the Authority for further proceedings.

## I. FINALITY AND LEGALITY: THE BALANCE REACHED IN THE FEDERAL SERVICE LABOR–MANAGEMENT RELATIONS ACT

The Federal Service Labor-Management Relations Act (Labor-Management Act or the Act), 5 U.S.C. §§ 7101–35 (1982), governs collective bargaining between federal civilian employees and management. *See generally American Federation of Government Employees v. Federal Labor Relations Authority*, 778 F.2d 850, 851–52 (D.C.Cir.1985) (*AFGE*). The Labor-Management Act confers collective bargaining rights upon employees. The Act also provides for the involvement of the Federal Service Impasses Panel (the Panel) in settling bargaining impasses. When a bargaining impasse arises between the parties, either party may request the Panel to conduct an inquiry. If the parties are unable to reach a settlement after the Panel has made initial recommendations, the Panel is empowered to hold hearings, take testimony, and "take whatever action is necessary and not inconsistent with this chapter to resolve the impasse." 5 U.S.C. § 7119(c)(5)(B)(i)–(iii). In the interest of finality, the Panel is authorized to impose

contract terms on the parties. These imposed terms become "binding on such parties during the term of the agreement, unless the parties agree otherwise." § 7119(c)(5)(C).

The Act, however, establishes a tension between the Panel's power to impose a binding provision on the parties and the statutory right of an agency head to review the provision. After the Panel has acted, the resulting agreement between the agency and its employees' exclusive representative is subject to approval by the head of the agency. § 7114(c)(1). The Labor-Management Act directs the agency head to approve the agreement within thirty days from the date the agreement is executed "if the agreement is in accordance with the provisions of this chapter and any other applicable law, rule, or regulation (unless the agency has granted an exception to the provision)." § 7114(c)(2).

An agency head's disapproval of an agreement is "essentially an assertion of nonnegotiability." *AFGE*, 778 F.2d at 853. Under the Labor-Management Act, assertions of nonnegotiability, including the agency head's disapproval, afford the union the right to review. § 7117(c)(2). The statute also provides criteria to determine whether the matter is indeed negotiable. For example, an employer has no duty to bargain in good faith on a matter to the extent that it is "inconsistent with any Federal law or any Government-wide rule or regulation." § 7117(a)(1). If the bargaining proposal is consistent with these external authorities, but is covered by an agency rule or regulation, it is negotiable only if the Authority finds that there is no compelling need for the agency's rule or regulation. § 7117(a)(2). The exclusive bargaining agent thus places negotiability in issue when it alleges, *inter alia*, either that the rule or regulation asserted by the agency as a bar to negotiations violates applicable law, or rule or regulation of appropriate authority outside the agency; or that no compelling need exists for the rule or regulation to bar negotiations on the matter. *See* 5 C.F.R. § 2424.1 (1985).

Thus, if the Authority determines that an Impasses Panel's provision was neither contrary to applicable external law nor contrary to an agency rule for which there is a compelling need, the agency head will have refused to negotiate on a negotiable issue. In the context of a Panel provision, the refusal will also have constituted failure to cooperate with impasse decisions. These two actions implicate the statute's prohibitions on unfair labor practices. The Act provides:

§ 7116(a)  For the purpose of this chapter, it shall be an unfair labor practice for an agency—

(1) to interfere with, restrain, or coerce any employee in the exercise by the employee of any right under this chapter;

(5) to refuse to consult or negotiate in good faith with a labor organization as required by this chapter;

(6) to fail or refuse to cooperate in impasse procedures and impasse decisions as required by this chapter.

## II.  The FLRA's Decision

This dispute arises out of collective bargaining between the U.S. Army Electronics Research and Development Command (ERADCOM) at Fort Monmouth, New Jersey, and NFFE Local 476, the exclusive bargaining representative for ERADCOM's civilian employees. The parties reached an impasse on issues relating to the procedures for performance appraisal of employees. The union proposed extending the period of advance notice—from 30 days to 60 days—that the agency must afford an employee before denying that employee a within-grade increase. Specifically, the proposal required ERADCOM to notify employees that they could avoid this result by improving performance to an acceptable level within sixty days. ERADCOM did not agree to this proposal, and the resulting impasse was submitted to the Panel pursuant to section 7119 of the Labor-Management Act.

The Panel deliberated and ordered ERADCOM to accept the union's proposal.

*Department of the Army, U.S. Army Electronics Research and Development Command, Fort Monmouth, New Jersey and Local 476, NFFE,* 82 FSIP 78 (Oct. 29, 1982). In accordance with the Panel's order, ERADCOM and the union added the union's proposal to their collective bargaining agreement in December 1982.

In January 1983, ERADCOM's parent command, the United States Army Materiel Development and Readiness Command (DARCOM), rejected the sixty-day notice provision. DARCOM declared the notice provision contrary to law or regulation, and therefore not subject to negotiation. Reviewing the provision as an agency head under section 7114, DARCOM asserted that the sixty-day provision conflicted with its existing regulation, which implemented the statutory minimum of thirty days' notice for employees against whom adverse action is proposed. *See* 5 U.S.C. § 4303(b)(1)(A). While the statute authorizes the agency to promulgate regulations extending this period for an additional thirty days, § 4303(b)(2), the Army has not drafted any such extension.

Petitioner filed an unfair labor practices charge based on the agency head's refusal to implement the Panel provision. The charge alleged that viewed in light of the government's failure to allege nonnegotiability prior to the Panel decision, its refusal to implement the Panel's decision, and its bargaining in bad faith, the agency head's disapproval of the Panel's provision violated subsections 7116(a)(1), (a)(5), and (a)(6). The charge also stated that the government could not show a compelling need for its thirty-day notice period when numerous contracts have already been negotiated that include a provision allowing for a sixty-day period in such actions. Absent a compelling need, regulations which are not government-wide cannot be used to avoid the collective bargaining process. *See* § 7117(a)(2).

After receipt of the NFFE's charge, the General Counsel of the Authority issued a complaint and notice of hearing in May 1983. *See* § 7104(f)(2). In a stipulation,

the parties asked the Authority to resolve the conflict between the agency's statutory obligation to disapprove of illegal contract provisions, on the one hand, and the agency's duty to abide by a provision that the Panel has ordered incorporated into the collective bargaining agreement.

At the time of its ruling on the stipulated issue, this basic issue of accommodating the impasse procedure with the right of an agency head to assert the agency's interpretation of a statute or regulation had not been addressed by this court. In *AFGE, supra,* we later upheld the FLRA's interpretation of the Labor-Management Act as authorizing an agency head to disapprove collective bargaining provisions that are contrary to law or regulation, even if those provisions were imposed on the parties by an order of the Federal Service Impasses Panel. *See AFGE,* 778 F.2d at 851 (affirming *Interpretation and Guidance,* 15 FLRA 564 (1984)).

The FLRA decided the instant case by holding that a federal agency head did not violate the unfair labor practice provisions of the statute by reviewing provisions imposed by the Panel. FLRA declined to consider whether on the facts before it the agency head's action was an unfair labor practice. In support of its decision not to reach the merits, the Authority observed that the General Counsel's complaint was incomplete; he had not alleged the agency head's disapproval of a provision that was in fact in accordance with applicable law. The agency therefore dismissed the complaint. *Decision and Order of FLRA,* 17 FLRA 19 (Feb. 28, 1985).

### III. THE AGENCY HEAD'S AUTHORITY TO DISAPPROVE CONTRACT PROVISIONS ORDERED BY THE PANEL

At the time this case was briefed, petitioner's principal argument was that agency heads lack the authority to review, and may never reject, final orders of the Panel issued pursuant to section 7119. As we have noted, *supra,* we have recently settled this issue. *See AFGE,* 778 F.2d at 857.

Consistent with our holding in *AFGE,* the Authority upheld an agency head's power, *in proper circumstances,* to disapprove collective bargaining provisions ordered by the Panel. The Authority's decision, however, left an important issue unresolved in this dispute between NFFE and DARCOM. Neither the Authority nor our recent decision in *AFGE* settled the issue of whether, in disapproving the particular Panel provision at stake here, the agency head committed an unfair labor practice. NFFE argues that even conceding an agency head's general disapproval authority, the agency head in this case improperly applied his authority to a negotiable contract provision. The FLRA itself admitted in its order that if a Panel-imposed provision disapproved by an agency head is found in fact *not* to be contrary to applicable law, the agency head's conduct would constitute a failure or refusal "to cooperate in ... impasse decisions" in violation of subsections 7116(a)(1) & (6) of the Labor-Management Act.

Instead of examining DARCOM's conduct to see if it was in fact justified, however, FLRA simply dismissed the General Counsel's complaint. The Authority relied on the General Counsel's failure to specifically allege or establish in the complaint filed with the Authority that the agency head had rejected a Panel decision that was in fact "not contrary to the Statute."

We hold that the unfair labor practices complaint, as originally filed, was sufficient to preclude the Authority from simply dismissing it without explaining why it was declining to reach the underlying issue of the Panel provision's legality. The complaint alleged that the agency head improperly refused to implement a Panel order and engaged in unfair labor practices. Since an agency head may properly refuse to implement a Panel order only under the disapproval authority of section 7114(c)(2), the charge of non-cooperation with the Panel raised a question about the accuracy of the agency head's determination that the provision violated applicable law. In alleging the agency head's refusal to implement

a Panel order, the complaint necessarily implicates this underlying question of the provision's consistency with applicable statutes and regulations. *See* 5 C.F.R. § 2424.1 (1985).

Since the General Counsel offered no proof on this underlying issue, the Authority need not reach it *if* the General Counsel has the initial burden of specifically alleging or establishing that the Panel provision disapproved by the agency was in fact *not* contrary to applicable law, rule, or regulation. On the other·hand, the agency head may have the burden of alleging and establishing, as an affirmative defense, that the term he rejected was indeed contrary to applicable law, rule, or regulation. If the agency head has this burden, then the General Counsel's unadorned assertion that the agency head has refused to implement a Panel order is sufficient to place the underlying issue before the Authority.

We do not, in the first instance, express a view on how the Authority is to proceed in allocating the burden of proof between the General Counsel and the agency head. We simply charge the Authority with making this allocation openly, rather than *sub silentio.*

If the Authority places the burden of proof on the agency head, then the Authority must proceed to the merits of the General Counsel's complaint. Its inquiry then narrows to whether a compelling need exists for the current agency-specific regulation, which provides for a thirty days' notice period rather than the sixty days that the Panel ordered.

On this point the Army has volunteered little, tersely explaining that it decided not to exercise its unilateral right to provide by regulation for an additional thirty days' notice. This conclusory statement is unsatisfactory. It camouflages the erroneous notion that the agency may within its sole discretion rely on internal regulations, whether or not the agency has a compelling need for them, even when this reliance would prevent compliance with Panel decisions. As a federal employer, today's Army cannot so easily shield itself from its burden of complying with Impasses Panel decisions.

Should the Authority reach the merits of this question on remand, it must determine whether the Army's regulations are all that they can be. In this task the Authority has ample guidance. The FLRA's regulations spell out the standards the Authority should apply in determining whether there is a compelling need for an agency rule or regulation on employment conditions. *See* 5 C.F.R. § 2424.11 (1985).

## CONCLUSION

The Authority simply dismissed the General Counsel's complaint once it made the threshold determination that the agency head's exercise of his disapproval authority under section 7114 did not *per se* violate his duty under section 7119 to comply with Panel-imposed provisions. Our recent opinion in *AFGE* reaches the same conclusion about the scope of the agency head's general disapproval power. But neither the Authority nor *AFGE* resolved the issue of whether the agency head erred, and thereby violated section 7116, in applying his disapproval power to the particular Panel provision in this case.

Therefore we remand this case to allow the General Counsel to pursue this charge with the Authority. If the complaint is pressed, the Authority must determine whether its allegation of a section 7119 violation is sufficient to place the consistency of the Panel provision with applicable law, rule, or regulation in issue. If it does, the Authority must proceed to examine the legality of the agency head's exercise, in this particular instance, of his undeniable disapproval power. This inquiry rests on whether DARCOM has demonstrated a compelling need for a notice period of thirty days when Congress has authorized sixty days' notice in appropriate circumstances.

The decision of the FLRA dismissing the General Counsel's complaint is therefore

*Reversed and remanded.*

SILBERMAN, Circuit Judge, dissenting:

Since the majority opinion effectively amends the General Counsel's Complaint by reading more into it than can legitimately be found either by this court or, for that matter, by the Authority,[1] the court violates one of the most fundamental and settled principles of federal labor law: that the FLRA and NLRB General Counsel, as a necessary corollary of their unreviewable discretion to determine whether to bring unfair labor practice Complaints,[2] have plenary authority to determine the scope of such Complaints.[3] Accordingly, I am obliged to dissent.

The Complaint, filed on May 10, 1983, raised solely an issue subsequently resolved by the FLRA in an interpretive rule affirmed by this court. *See Interpretation and Guidance*, 15 F.L.R.A. 564 (1984), *aff'd*, *American Fed'n of Gov't Employees v. FLRA*, 778 F.2d 850, 863 (D.C.Cir.1985) (Ginsburg, J., dissenting). That issue was

whether under 5 U.S.C. § 7114(c) (1982) agency heads "are empowered to review *all* provisions of collective bargaining agreements, including those mandated by the [Federal Service Impasses] Panel, to assure conformity with the provisions of the [Federal Service Labor-Management Relations] Statute as well as other applicable laws, rules, and regulations." *Interpretation and Guidance*, 15 F.L.R.A. 564, 567 (1984) (emphasis in original). The union, in the charge it filed with the General Counsel, implicitly sought to raise in addition the entirely separate question on which the majority focuses: whether in this particular case the Army improperly rejected the Panel-imposed contract clause because the agency rule upon which the Army relied was not based on "compelling need," as defined in 5 C.F.R. § 2424.11 (1985). *See* Joint Appendix (J.A.) at 11–12. The General Counsel neither raised this question in his original Complaint nor sought to amend the Complaint to place

**1.** The Authority and this court may only pass on the allegations which the General Counsel places before them. This is conclusively established by the caselaw concerning the powers of the NLRB's General Counsel, upon which Congress explicitly modelled the FLRA General Counsel. *Turgeon v. FLRA*, 677 F.2d 937, 939–40 (D.C.Cir.1982). "The Board may not make findings or order remedies on violations not charged in the General Counsel's complaint or litigated in the subsequent hearing.... Even where the record contains evidence supporting a remedial order, the court will not grant enforcement in the absence of either a supporting allegation in the complaint or a meaningful opportunity to litigate the underlying issue in the hearing itself." *NLRB v. Blake Constr. Co.*, 663 F.2d 272, 279 (D.C.Cir.1981) (citations omitted). *See also NLRB v. Tamper, Inc.*, 522 F.2d 781, 788–89 & n. 10 (4th Cir.1975); *Montgomery Ward & Co. v. NLRB*, 385 F.2d 760, 763 (8th Cir.1967) ("Evidence without a supporting allegation cannot serve as the basis of a determination of an unfair labor practice.") (citation omitted); *West Point Mfg. Co. v. NLRB*, 330 F.2d 579, 591 (4th Cir.), *cert. denied*, 379 U.S. 882, 85 S.Ct. 144, 13 L.Ed.2d 88 (1964) ("A court has no power to order the General Counsel to issue a complaint and no power to require the Board to issue an order in a matter which is not before it.") (citations and footnotes omitted).

Given the contents of the Complaint at issue here, the General Counsel was precluded from arguing, and the FLRA from deciding, the mer-

its of the Army's negotiability determination. The Complaint must include "[a] clear and concise description of the acts which are claimed to constitute unfair labor practices...." 5 C.F.R. § 2423.12(b)(7). "Both the Administrative Procedure Act and the [NLRB's] own rules require that the complaint inform the [respondent] of the violations asserted." *Blake*, 663 F.2d at 279 (footnotes omitted) (construing identical NLRB rule and 5 U.S.C. § 554(b)(3)), and cases cited therein. *Accord Soule Glass & Glazing Co. v. NLRB*, 652 F.2d 1055, 1073–75 (1st Cir.1981).

**2.** *See* 5 C.F.R. § 2423.10(e) (1985) ("The General Counsel may sustain the Regional Director's refusal to issue or reissue a complaint, stating the grounds of affirmance, or may direct the Regional Director to take further action.... The decision of the General Counsel shall be final."); *Turgeon*, 677 F.2d 937 (D.C.Cir.1982); *Martinez v. Smith*, 768 F.2d 479 (1st Cir.1985); *Martel v. Carroll*, 562 F.Supp. 443, 444 (D.Mass.1983). Congress explicitly modelled the plenary discretion of the FLRA General Counsel on that of the NLRB's General Counsel. *See Turgeon*, 677 F.2d at 939–40.

**3.** *See Winn-Dixie Stores, Inc. v. NLRB*, 567 F.2d 1343, 1350 (5th Cir.), *cert. denied*, 439 U.S. 985, 99 S.Ct. 576, 58 L.Ed.2d 656 (1978) (NLRA "leaves to the general counsel the decision as to what is and what is not at issue in an unfair labor practice hearing"); *West Point*, 330 F.2d at 590–91 ("The decision as to the *scope* of a complaint is for the General Counsel.").

this issue before the FLRA after the promulgation of the *Interpretation and Guidance*.[4] Under those circumstances the FLRA had absolutely no choice but to dispose of the case as it did. *See supra* note 1.

Although I find the Complaint abundantly clear on its face,[5] in this case there really cannot be any question as to its scope since the parties stipulated to the single issue before the Authority:

> Whether an agency is preempted from exercising its statutory obligation under Section 7114(c) of the Statute when a subordinate activity is under a Federal Service Impasses Panel Decision and Order under Section 7119(c)(5)(C) of the Statute regarding incorporation of a provision in a collective bargaining agreement.

Stipulation of July 22, 1983 of Dep't of Army, Nat'l Fed'n of Fed. Employees and General Counsel, J.A. at 9 (signed by counsel for the Army, the union, and the General Counsel).

This Stipulation cannot reasonably be read to raise the issue the court wishes resolved: whether, in the event the Army was not pre-empted from exercising its statutory power, it nonetheless "improperly" exercised that power in this case. Moreover, the General Counsel's memoran-

dum to the FLRA assiduously avoids this subject.

Of course, there are numerous possibilities that could explain why the General Counsel refused to challenge the merits of the Army's rule. He may have thought that the Army was substantively correct in its negotiability determination although, in his view, procedurally barred from raising its objections at that point. He may, on the other hand, have thought that the case was not a suitable vehicle for challenging the merits of the determination. Or, since the union has the right to appeal a question of negotiability directly to the Authority (but must choose between pursuing such a direct appeal or filing an unfair labor practice charge with the General Counsel, *see* 5 C.F.R. §§ 2423.5, 2424.5), he may have concluded that his scarce resources would be better employed elsewhere. But it is surely not our role to inquire into the grounds for the General Counsel's decision—let alone review them.[6] The General Counsel's strict avoidance of any reference to the merits of the Army's decision has all the hallmarks of a conscious exercise of discretion in framing the issues for FLRA review—a choice the FLRA was bound to, and did, respect. So must this court. *Blake*, 663 F.2d at 279; *West Point*, 330 F.2d at 590–91.

---

4. Although the Complaint issued before the FLRA's *Interpretation and Guidance,* the General Counsel, *had he so chosen,* could have moved to amend the Complaint at any time between August 17, 1984, when the *Interpretation* was promulgated, and February 28, 1985, the date of the FLRA's disposition of the Complaint. *See* 5 C.F.R. § 2423.12(d) (1985).

5. The Complaint recited, *inter alia,* that the Army, by rejecting as non-negotiable the 60-day notice provision mandated by the Panel, had failed and refused to comply with the provisions of section 7119(c)(5)(C) of the statute, Complaint and Notice of Hearing ¶ 9 (J.A. at 15), which in turn states that "any final action of the Panel under this section ... shall be binding on [the] parties during the term of the agreement...." Any such refusal would therefore also be, as the General Counsel further alleged, a refusal to negotiate in good faith and an unfair labor practice under 5 U.S.C. §§ 7116(a)(1), (5), and (6). Complaint and No-

tice of Hearing ¶¶ 10–11 (J.A. at 15). *See* Memorandum to the FLRA on Behalf of Counsel for the General Counsel at 6–7 (J.A. at 55–56).

6. None of the parties' briefs before this court argued that the Complaint raised what I call the merits issue. *Cf.* 5 U.S.C. § 7123(c): "No objection that has not been urged before the Authority, or its designee, shall be considered by the court, unless the failure or neglect to urge the objection is excused because of extraordinary circumstances." The union argued rather that if the court sustained the *Interpretation and Guidance* it should order the FLRA to remand the case to the General Counsel to allow "an opportunity" to amend the Complaint. That is merely another way of encroaching on the General Counsel's discretion by seeking to exert pressure on the General Counsel to revisit a decision he has already made. Had he wanted to amend the Complaint he had six months in which to act before the FLRA's disposition of this case. *See supra* note 4.

---

The majority, as I understand its opinion, implies that if the FLRA were to determine that the agency bore the burden of proof in an unfair labor practice proceeding challenging the "compelling need" for an agency regulation, then our remand would not impermissibly invade the General Counsel's discretion. Maj.Op. at 948. Although the burden of proof issue is not before us, I find the suggestion that the burden of proof on negotiability could be placed on the respondent in an unfair labor practice proceeding somewhat strained. *See* 5 U.S.C. § 7118(a)(8); 5 C.F.R. § 2423.18; R. GORMAN, LABOR LAW 9 (1976) ("[T]he burden of proof or of persuasion is on the [NLRB] General Counsel.").[7]

In any event, whatever the proper resolution of the burden of proof question raised by the majority, I believe that resolution could provide no support for the court's order here. Even assuming, *arguendo,* that the agency bore the burden of proving a compelling need for the regulation upon which it relies, that in no way dispenses with the statutory requirement that the General Counsel must challenge in his Complaint the agency's position on negotiability in order to confer on the FLRA power to resolve that issue. *See supra.* As shown above, the General Counsel chose not to quarrel with the merits of the Army's regulation, and a ruling on the hypothetical burden of proof question cannot provide the missing allegations in the Complaint.

Finally, I regret the majority's gratuitous dicta concerning its anticipatory dissatisfaction with the Army's justification for its rule. Maj.Op. at 948. Since the merits (the compelling need for the regulation) have never been placed in issue, it would seem, at the bare minimum, premature to criticize the Army's behavior.

7. As I mentioned above, the union can seek direct review of an agency regulation which the agency asserts blocks negotiability. Unless the FLRA's statutory scheme can be interpreted as giving unions an overwhelming incentive to seek direct review rather than contest negotiability determinations through unfair labor practice charges, one would assume that the allocation of burdens of proof would be similar in both unfair labor practice proceedings and direct FLRA review.