**OFFICE OF PERSONNEL MANAGEMENT,**
Petitioner,

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent,**

**American Federation of Government Employees, AFL–CIO, Intervenor.**

No. 87–1726.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 14, 1988.

Decided Dec. 20, 1988.

Thomas M. Bondy, Atty., Dept. of Justice, with whom John R. Bolton, Asst. Atty. Gen., and William Kanter and Mary K. Doyle, Attys., Dept. of Justice, Washington, D.C., were on the brief, for petitioner. Jacob M. Lewis, Attorney, Dept. of Justice, Washington, D.C., also entered an appearance for petitioner.

Robert J. Englehart, Atty., Federal Labor Relations Authority, with whom William E. Persina, Acting Sol., Federal Labor Relations Authority, Washington, D.C., was on the brief, for respondent. Arthur A. Horowitz, Atty., Federal Labor Relations Authority, Washington, D.C., also entered an appearance for respondent.

Stuart A. Kirsch, Mark D. Roth, and Philip Kete, Washington, D.C., were on the brief for intervenor.

Before WALD, Chief Judge, and MIKVA and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge MIKVA.

Dissenting Opinion filed by Circuit Judge SENTELLE.

MIKVA, Circuit Judge:

This case reviews a determination by the Federal Labor Relations Authority ("FLRA" or "Authority") that a union proposal is negotiable. *AFGE, AFL–CIO, Local 32 and Office of Personnel Management*, 29 F.L.R.A. (No. 40) 380 (1987). The case presents the question whether a government-wide regulation that is a mere restatement of management prerogatives established by the Federal Labor–Management Relations statute, 5 U.S.C. §§ 7101–7135 (1982 & Supp.1988) ("statute"), can serve as a greater bar to bargaining than the statutory prerogatives themselves. This case, in other words, is the "anomalous situation" that we left "for another day" in *AFGE, Local 2782 v. FLRA*, 803 F.2d 737, 742 (D.C.Cir.1986) *("Local 2782")*. We now hold that a government-wide rule or regulation that merely restates a statutorily guaranteed prerogative of management cannot render a bargaining proposal nonnegotiable where the underlying statutory prerogative does not do so.

## I. INTRODUCTION

The American Federation of Government Employees, AFL–CIO, Local 32 ("union") made a proposal ("Proposal 2") which provided:

> Reemployment eligibles (employees who are separated through reduction in force [RIF]) will be reemployed at former or lower grades in positions for which they qualify by being selected in preference to applicants from all other sources.

29 F.L.R.A. at 389. The Office of Personnel Management ("OPM" or "agency") refused to bargain, arguing that Proposal 2 interfered with its right to fill positions from "any * * * appropriate source" under section 7106(a)(2)(C) of the statute. OPM also pointed to Requirement 4 of subchapter 1–4, chapter 335 of the Federal Personnel Manual ("FPM"), which lists merit pro-

motion requirements for federal employees covered by the FPM:

> Selection procedures will provide for management's right to select or not select from among a group of best qualified candidates. They will also provide for management's right to select from other appropriate sources, such as reemployment priority lists, reinstatement, transfer, handicapped, or Veterans Readjustment eligibles or those within reach on an appropriate OPM certificate. In deciding which source or sources to use, agencies have an obligation to determine which is most likely to best meet the agency mission objectives, contribute fresh ideas and new viewpoints, and meet the agency's affirmative action goals.

29 F.L.R.A. at 393.

The union filed a negotiability appeal with the Authority, and, in a split decision, the Authority found Proposal 2 negotiable. The majority decision consists of Parts II and IV of Chairman Calhoun's opinion, in which Member McKee joined. *Id.* at 403. Chairman Calhoun concluded that although Proposal 2 does interfere with an agency's right to select employees for vacancies from any appropriate source under section 7106(a)(2)(C), it is an "appropriate arrangement" under section 7106(b)(3) because it does not "excessively interfere[] with the exercise of the management right." *Id.* at 399. He argued that Requirement 4 is essentially a restatement of the management rights under section 7106(a)(2)(C), and should not be construed as a greater bar to bargaining than the statutory right itself. *Id.* at 399–402. Chairman Calhoun, in a section not joined by Member McKee, found that Proposal 2 was negotiable even under the agency's view of the statute because subchapter 1–5(c) of chapter 335 provides discretion for the agency to exempt reemployment eligibles from coverage of the merit promotion plan. *Id.* at 393–99. Member Frazier, in a vociferous dissent on the Proposal 2 issue, argued that Requirement 4 is a government-wide regulation which, under section 7117(a)(1) of the statute, renders the proposal nonnegotiable. *Id.* at 405–13. In addition, he disputed

Chairman Calhoun's characterization of the FPM, contending that it did not create a zone of discretion over which the agency could bargain. *Id.* at 414–20.

This petition for review followed. Because we hold that section 7117(a)(1) does not render Proposal 2 nonnegotiable, we need not decide whether subchapter 1–5(c) of chapter 335 provides discretion over which bargaining could take place.

## II. DISCUSSION

### A. *Section 7117(a)(1)*

It is undisputed that Proposal 2, at least to some extent, interferes with management rights under section 7106(a)(2)(C) "to make selections" to fill vacancies from "among properly ranked and certified candidates for promotion" or from "any other appropriate source." The proposal would require an agency to select qualified RIF'd employees in preference to applicants from other sources. Nevertheless, were section 7106 the only relevant provision in the statute, Proposal 2 would be negotiable because it is an "appropriate arrangement" under section 7106(b)(3).

■ Requirement 4, however, is a "government-wide rule or regulation," within the meaning of section 7117(a). *See Local 2782*, 803 F.2d at 741–42 & n. 2; 29 F.L.R.A. at 391. OPM maintains that section 7117(a)(1), which provides that the duty to bargain does not extend to matters that are the subject of any such regulation, operates as an independent bar to negotiability in this instance. The first issue for decision is whether section 7117(a)(1) renders nonnegotiable proposals that conflict with any kind of government-wide rules, as OPM contends, or whether that section applies only to government-wide rules that do more than merely restate management rights codified in the statute, as the FLRA maintains.

We agree with FLRA's interpretation. Because section 7117(a)(1) is part of the Authority's enabling legislation, and not OPM's, we owe deference primarily to the FLRA's construction of that section. While we defer to OPM's construction of

Requirement 4, the meaning of the regulation is not determinative of the scope of negotiability established by section 7117(a)(1). We uphold the FLRA's determination that section 7117(a)(1) renders nonnegotiable only those regulations that amount to more than a restatement of management's statutory rights because it is a "reasonable and defensible" construction of the statute. *Bureau of Alcohol, Tobacco, & Firearms v. FLRA*, 464 U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983).

When presented with "a pure question of statutory construction," a court's "first job is to try to determine congressional intent using 'traditional tools of statutory construction.'" *NLRB v. United Food & Commercial Workers Union, Local 23*, 484 U.S. 112, 108 S.Ct. 413, 421, 98 L.Ed. 2d 429 (1987) (quoting *INS v. Cardoza–Fonseca*, 480 U.S. 421, 107 S.Ct. 1207, 1221, 94 L.Ed.2d 434 (1987)); *see FLRA v. Aberdeen Proving Ground*, — U.S. —, 108 S.Ct. 1261, 1262–63, 99 L.Ed.2d 470 (1988) (per curiam). In this case, however, "the statute is silent or ambiguous with respect to the specific issue," *Chevron, U.S.A. v. NRDC*, 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984), because there is no indication Congress contemplated that government-wide regulations that merely restated existing management prerogatives would prevent bargaining over appropriate arrangements. The question is whether the Authority's interpretation is a "reasonable" one, *id.* at 845, 104 S.Ct. at 2783, i.e., "rational and consistent with the statute." *United Food & Commercial Workers*, 108 S.Ct. at 421.

The Authority's construction of the statute meets this test. To permit regulations that merely recite section 7106(a) rights to prevent bargaining over appropriate arrangements is to read section 7106(b)(3) out of the statute. As the Authority reasoned, "[s]ince any proposal which interferes with management's right under section 7106(a)(2)(C) would also conflict with Requirement 4, that right would not be subject to appropriate arrangements negotiated under subsection (b)(3) when the employ-

ees are subject to the FPM." 29 F.L.R.A. at 401. OPM's interpretation, taken to its logical conclusion, would allow it and other agencies to circumvent section 7106(b)(3) simply by promulgating a regulation that tracked section 7106(a) word-for-word. This would amount to a power to issue a regulation that read: "No bargaining can occur over appropriate arrangements, even where section 7106(b)(3) would otherwise apply." OPM cannot prevent bargaining by issuing regulations that merely parrot statutory management rights which do not themselves prohibit bargaining. *Cf. EEOC v. FLRA*, 744 F.2d 842, 851 (D.C.Cir.1984), *cert. dismissed*, 476 U.S. 19, 106 S.Ct. 1678, 90 L.Ed.2d 19 (1986).

Congress intended that section 7106(b)(3) would play a vital role in federal labor-management relations—a role that OPM's interpretation would nullify. "It would require legislative history of exceptional clarity to induce us to adopt an interpretation which * * * would deprive paragraph (b)(3) of virtually all effect." *AFGE v. FLRA*, 702 F.2d 1183, 1187–88 (D.C.Cir.1983). The final version of the management rights provision was added on the floor of the House through a compromise offered by Representative Udall, the floor manager. *See* 124 Cong. Rec. 29,174 (1978). Representative Udall described his substitute as a "middle ground" that recognized both management prerogatives and employee rights and thus provided "some balance" to the statute. *Id.* at 29,182. Labor supporters agreed to the compromise on the understanding that "the management rights clause is to be construed as a narrow exception to the general obligation to bargain in good faith." *Id.* at 29,187 (statement of Rep. Clay, chairman of Subcommittee on Civil Service, House Committee on Post Office & Civil Service). Representative Clay stressed that "it is essential that only those proposals that directly and integrally go to the specified management rights be barred from the negotiations." *Id.* Thus, "the exercise of any management rights in the section does not preclude negotiations over procedures or adverse effects involved in those rights." *Id.*

Similarly, Representative Ford, a House conferee described in the House debate as having "played a key, critical role" in the compromise and as having "made it possible," 124 Cong.Rec. 29,197 (1978) (statement of Rep. Udall), identified a broad presumption in favor of negotiability. Congress intended that "wherever possible, both parties [should] work out their differences in negotiations. * * * In agreeing to this Udall compromise of adding several more portions to this [management rights] section, we fully intend that the committee's original position go unchanged and that this section be narrowly construed." *Id.* at 29,198. Representative Ford emphasized that "section 7106 [should] 'be read to favor collective bargaining whenever there is doubt as to the negotiability of a subject or proposal.'" *Id.* (quoting H.R.Rep. No. 1403, 95th Cong., 2d Sess. 44 (1978)). He promised that "the new authority will closely scrutinize agency claims of 'management rights,'" *id.* at 29,198–99, and noted that "we expressly provided in the language of title VII itself that negotiations may occur over the adverse impact caused by the exercise of any of the management rights in title VII and that procedures may be negotiated for the exercise of those rights," *id.* at 29,197.

Viewed through the lens of this carefully crafted and painstakingly negotiated scheme, OPM's interpretation of the statute makes no sense. To prevent bargaining over section 7106(b)(3) arrangements due to a regulation that is the substantive equivalent of section 7106(a) is to grant to management the protection that it was unable to secure from Congress. The task of a reviewing court is to give a statute "the most harmonious, comprehensive meaning possible," *Clark v. Uebersee Finanz–Korporation*, 332 U.S. 480, 488, 68 S.Ct. 174, 178, 92 L.Ed. 88 (1947), and not "to impute to Congress a purpose to paralyze with one hand what it sought to promote with the other." *Id.; see United States v. Menasche*, 348 U.S. 528, 538–39, 75 S.Ct. 513, 519–20, 99 L.Ed. 615 (1955); *Local 2782*, 803 F.2d at 741; *Blitz v. Donovan*, 740 F.2d 1241, 1246 (D.C.Cir.1984). The Authority's interpretation of the statute pre-

serves a role for section 7106(b)(3) commensurate with the attention that provision received from Congress. We therefore uphold it as reasonable.

Petitioner maintains that the language of section 7106(b), which provides only that "[n]othing in this section" will preclude the negotiation of appropriate arrangements and procedures, limits the application of section 7106(b)(3) to the specific grants of management prerogatives in section 7106(a). Section 7106(b)(3) cannot render the proposal negotiable in this case, according to this line of argument, because Requirement 4 is an independent bar to bargaining that is not found in section 7106(a).

The short answer to this is that section 7106 must be interpreted as a whole according to its substance, not its form. Section 7106(b)(3) provides that none of the management prerogatives *qua concepts* contained in section 7106(a) can bar negotiations over appropriate arrangements. Restating those prerogatives in regulation form can give them no greater preclusive effect. By "restatement," we mean that Requirement 4 is the functional equivalent of section 7106(a)(2)(C), *see* Part B *infra*. That is, Requirement 4 bestows no broader management powers, nor provides more specific direction regarding the exercise of existing powers, than does section 7106(a)(2)(C) alone. Our holding today does not preclude OPM from using its expertise to identify *particular* arrangements that, if subject to bargaining, might threaten the governmental efficiency and merit objectives of the statute. OPM, however, must do more than simply set out rehashed versions of the statute in general terms.

Neither does the language of section 7117(a) render unreasonable FLRA's construction. Section 7117(a)(1) provides that proposals inconsistent with government-wide rules or regulations are nonnegotiable, and petitioners point out that Congress did not expressly include an exception for regulations that merely restate section 7106(a) rights. This strategy of literal interpretation answers itself, however, for neither did Congress expressly preclude

such an interpretation by FLRA, especially when the alternative interpretation would defeat the purposes of the statute. Given the "conflicting policies" represented by sections 7106(b)(3) and 7117(a)(1), the Authority's position is a "reasonable accommodation." *Chevron, U.S.A. v. NRDC*, 467 U.S. 837, 845, 104 S.Ct. 2778, 2783, 81 L.Ed. 2d 694 (1984) (quoting *United States v. Shimer*, 367 U.S. 374, 383, 81 S.Ct. 1554, 1560, 6 L.Ed.2d 908 (1961)).

Our deference to FLRA's construction is heightened by the fact that there is simply no indication that Congress, in passing the statute, imagined that government-wide rules might be promulgated that merely restated sections of the statute. To be sure, Congress recognized that government-wide rules and regulations, including provisions of the Federal Personnel Manual, might "restrict the scope of collective bargaining which might otherwise be permissible under the provisions of this title." H.R.Rep. No. 1717, 95th Cong., 2d Sess. 155 (1978), U.S.Code Cong. & Admin.News 1978, pp. 2723, 2889. Congress, however, did not contemplate what the content of those regulations might be. Instead, it spent most of its energies debating the effect of subsequently adopted regulations on existing collective bargaining agreements, *see id.*, and whether government-wide regulations should bar negotiations only upon a showing of "compelling need," *see* H.R. 11280, 95th Cong., 1st Sess. § 7117 (Committee Print of July 10, 1978); 124 Cong.Rec. 24,286 (1978) (statement of Rep. Clay); *id.* at 25,721 (statement of Rep. Ford), or instead whether they should serve as an "absolute bar," *see id.* at 29,184 (section-by-section analysis by Rep. Udall of his substitute).

Our conclusion that Congress did not intend section 7117(a)(1) to be given the expansive reading sought by OPM is confirmed by the fact that major players in the legislation, such as Representative Clay, continued to emphasize the narrowness of the management rights established by the statute, and the broadness of the duty to bargain over procedures and appropriate arrangements, while *at the same time* recognizing that section 7117 "removes

many Government-wide regulations from collective bargaining." 124 Cong.Rec. 29,-187 (1978). It strains plausibility to assert, as OPM does, that Congress could have made statements in support of section 7106(b)(3) while simultaneously fashioning an omnipotent veto mechanism in the form of government-wide regulations which involve no specificity beyond restating the statute itself.

No prior court has ever held that a regulation which merely restated management rights under the statute would be given preclusive effect by section 7117(a)(1). In *Local 2782,* this court upheld FLRA's determination that Requirement 4 prohibited bargaining over an appropriate arrangement, but our holding was limited to whether Requirement 4 was actually inconsistent with the union proposal and whether it was a government-wide regulation. *See* 803 F.2d at 739–42. Most courts that have mentioned section 7117(a)(1) have simply described it in general terms. *See, e.g., Overseas Education Ass'n v. FLRA,* 827 F.2d 814, 816 (D.C.Cir.1987); *National Federation of Federal Employees v. FLRA,* 789 F.2d 944, 945 (D.C.Cir.1986); *Department of Defense v. FLRA,* 685 F.2d 641, 644 (D.C.Cir.1982); *Department of Defense, Army–Air Force Exchange Service v. FLRA,* 659 F.2d 1140, 1143 n. 3 (D.C.Cir.1981), *cert. denied,* 455 U.S. 945, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982). Some have actually suggested that section 7117(a)(1) should be read in tandem with section 7106, implicitly lending support to the type of scheme proposed by FLRA. *See Local 32, AFGE v. FLRA,* 774 F.2d 498, 500 n. 3 (D.C.Cir.1985); *Department of Treasury v. FLRA,* 762 F.2d 1119, 1121–22 (D.C.Cir.1985). Certainly, no decision establishes that the reference to "any" rule or regulation in section 7117(a)(1) includes mere restatements of management 7106(a) rights.

We also note that prior cases involving section 7117(a)(1), far from granting OPM a "regulatory veto," have removed subjects from bargaining only in circumstances where the regulation at issue did not merely restate a section 7106(a) management right. *See NTEU v. FLRA,* 848 F.2d 1273,

1275 (D.C.Cir.1988) (probationary employees over which OPM has jurisdiction according to section 3321(a)); *Department of Treasury v. FLRA,* 762 F.2d 1119, 1121–22 (D.C.Cir.1985) (permitting job analysis regulation, which went beyond management rights established in 7106(a)(2)(C), to render proposal nonnegotiable under 7117(a)); *Department of Justice v. FLRA,* 709 F.2d 724, 729–30 (D.C.Cir.1983) (probationary employees).

Petitioner urges that the Authority has interpreted the statute differently in previous cases. The earlier instances cited by OPM are not as clear as it suggests. The Authority had never addressed the precise issue that we face today in its earlier rulings, which involved government-wide rules that sometimes merely restated management rights and sometimes did not. *See AFGE, Local 3186 and Department of Health & Human Services,* 23 F.L.R.A. (No. 30) 230, 234 (1986); *AFSCME, Local 2830 and Department of Justice,* 21 F.L.R.A. (No. 121) 1039, 1042 (1986); *AFGE, Local 2677 and Department of Health & Human Services,* 21 F.L.R.A. (No. 22) 117, 118–19 (1986); *NTEU and Department of Treasury,* 11 F.L.R.A. (No. 52) 247, 249 (1983); *AFGE, Local 2782 and Department of Commerce,* 7 F.L.R.A. (No. 13) 801, 804–06 (1984); *NTEU and IRS,* 3 F.L.R.A. (No. 118) 748, 751–55 (1980). The Authority has never before considered the distinction between mere restatements and regulations that go beyond, in scope or specificity, the management prerogatives listed in 7106(a). This is therefore a case where we must recognize that "[a]n initial agency interpretation is not instantly carved in stone. On the contrary, the agency, to engage in informed rulemaking, must consider varying interpretations and the wisdom of its policy on a continuing basis." *Chevron, U.S.A. v. NRDC,* 467 U.S. 837, 863–64, 104 S.Ct. 2778, 2792, 81 L.Ed.2d 694 (1984).

In any event, even if the Authority's reading of the statute in this case departs from the interpretation it had followed in previous cases, *see* 29 F.L.R.A. at 389 n. 1, we find that the FLRA has supplied a

"reasoned analysis" for the change. *Motor Vehicles Manufacturers Ass'n v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 42, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983). The construction it offers today is the only way to harmonize sections 7106(b)(3) and 7117(a) of the statute.

### B. *Requirement 4*

■ We have held that where a government-wide regulation is no more than a restatement of management prerogatives contained in section 7106(a), it cannot bar negotiations over "appropriate arrangements." The question remains: what constitutes a "restatement" of statutory prerogatives? We adopt a "practical effects" standard rather than a historical approach: the test depends neither on the origins of the regulation, nor on whether it developed prior to or independently from the statute, but rather on whether it provides management with new powers that it did not already have by virtue of section 7106(a), or directs the exercise of existing management prerogatives in a *specific* way, so that *particular* subjects or appropriate arrangements are identified as inappropriate topics of bargaining.

The historical approach advocated by petitioner is flawed because it provides no determinate result. The ancestors of Requirement 4 date back to 1954, but their language and legal effect have varied over time. *See* 29 F.L.R.A. at 406–09. Crucial language in Requirement 4 mandating that "[s]election procedures will provide for management's right to select from among a group of best qualified candidates," for example, was absent from its immediate predecessor, which referred only to "management's right to select or nonselect" and provided for "a procedure for referring to the selecting official a reasonable number of the best qualified candidates." *Id.* at 408. The relationship of Requirement 4, its predecessor, and section 7106(a)(2)(C) is murky indeed. Even petitioner recognizes that Requirement 4, issued when OPM came into existence in 1978, differs at least in statutory basis from its ancestors. Ultimately, this ar-

cheological approach is fruitless and unnecessary. Whatever Requirement 4's origins, *today* it confers no substantive rights beyond those contained in section 7106(a)(2)(C). This is a clearer and more meaningful test.

■ Under this "practical effects" standard, Requirement 4 is a restatement of management prerogatives contained in section 7106(a)(2)(C). Requirement 4 refers to "management's right to select or not select from among a group of best qualified candidates," and "management's right to select from other appropriate sources." The direction to exercise the selection power to meet agency objectives, seek out fresh ideas, and promote affirmative action goals merely alludes in the most general way to basic objectives of government administration. It falls far short of being the product of OPM's expertise in specifying how management authority is to be exercised. These "add nothing to management's right under section 7106." 29 F.L.R.A. at 400. Indeed, Requirement 4 even refers to "management's right to select," which can come from nowhere but section 7106(a). *Id.* Given how closely the language of Requirement 4 tracks that of section 7106(a), they seem to overlap in every case. Requirement 4 provides management with no more substantive rights, and is no more specific, than section 7106(a).

In reaching this conclusion, we accord deference to OPM's, rather than the FLRA's, interpretation of Requirement 4. The Authority is not entitled to *Chevron* deference when it is interpreting a statute other than its organic statute, *see Illinois National Guard v. FLRA*, 854 F.2d 1396, 1400 (D.C.Cir.1988); *Colorado Nurses Ass'n v. FLRA*, 851 F.2d 1486, 1488–89 (D.C.Cir.1988). By analogous reasoning, deference is inappropriate when the FLRA interprets regulations promulgated by a different agency. *See Department of Treasury v. FLRA*, 837 F.2d 1163, 1167 (D.C.Cir.1988). But this is a hybrid case; in determining whether Requirement 4 is a restatement of section 7106(a)(2)(C), we must necessarily decide the scope of section 7106(a)(2)(C). Therefore, the Authori-

ty's construction of section 7106(a)(2)(C) must also be given weight. According deference to OPM's interpretation of Requirement 4 and to the FLRA's views of section 7106(a)(2)(C), we find, based on the language and practical effect of the regulation, that Requirement 4 is nothing more than a restatement of the management prerogatives contained in the statute.

### III. CONCLUSION

We emphasize the narrowness of our holding today. We decide only that where a government-wide regulation is a mere restatement of the management prerogatives listed in section 7106(a), it cannot render nonnegotiable an appropriate arrangement under section 7106(b)(3). We intimate no views on regulations that provide additional management rights, nor on those that direct management to exercise its existing prerogatives in certain specific ways. In this case, however, the Authority has construed its enabling statute reasonably.

*The petition for review is denied.*

SENTELLE, Circuit Judge, dissenting:

While I find this case to be a close one and the majority's reasoning to be convincing, I am not convinced. As the majority notes, section 7117(a)(1) provides that the duty to bargain does not extend to matters that are inconsistent with a "government-wide rule or regulation." It is established that Requirement 4 is such a rule or regulation. *See AFGE, Local 2782 v. FLRA,* 803 F.2d 737, 742 (D.C.Cir.1986) ("Local 2782"). As the majority further notes, in *Local 2782* we affirmed the Authority's determination that the bargaining proposal affording preference to "repromotion eligibles" (those employees demoted through no fault of their own) was nonnegotiable since it was inconsistent with FPM § 1–4. That is the same requirement before the Court in the instant case. Requirement 4 authorizes agencies to fill their job openings from enumerated sources and directs that "[i]n deciding which source or sources to use, agency's have an obligation to determine which is most likely to best meet the agency mission objectives, contribute fresh ideas and new viewpoints, and meet the agencies affirmative action goals." The bargaining proposal offered by Local 32 and opposed by the Office of Personnel Management is inconsistent with that "government-wide rule or regulation," just as that of Local 2782. The creation of the preference for RIF victims is simply inconsistent with the objectives required in the quoted portion of Requirement 4.

I appreciate the majority's concern that a government-wide rule or regulation restating a statutory management right could protect from bargaining something that Congress had otherwise deemed an appropriate bargaining subject under a specific section, such as section 7106(b)(3). I simply do not accept the majority's conclusion that this is that case. Requirement 4 is not simply a restatement of the management rights set forth in section 7106(a). Requirement 4 informs and molds the discretion of management toward the achievement of certain objectives not referenced in the statute. Therefore, I would conclude that this proposal is nonnegotiable and that we have not yet reached "another day" as we do not yet face the "anomalous situation" posed in *Local 2782,* 803 F.2d at 742.

In determining whether "another day" has arrived, I am troubled by the implications of the majority's "practical effects" standard for determining what constitutes a "restatement" of statutory prerogatives. This test seems to me to risk draining the content from the nonnegotiability of government-wide rules and regulations established by section 7117(a). Any time the Executive exercises its discretion in personnel matters in a fashion not inconsistent with the discretion left it by the Legislative Branch, the resulting rule or regulation could certainly be said to have the same practical effect as an underlying statute. I do not accuse the majority of going that far in stating the test; I do, however, fear that the precedent may lurk in this test for a future judicial landscape in which every personnel regulation may either be invalid as being beyond the scope of the Executive's authority or be negotiable as having the practical effect of restatement, at least where it acts in an area otherwise subject

to negotiation. While I commend the majority for emphasizing the narrowness of its holding, I fear that its test may achieve the germ of progeny more ungainly than either the Authority or the majority meant to create.

I do not feel compelled to express opinion as to whether the "[n]othing in this *section*" language of section 7106(b) has any effect on the negotiability of matters rendered nonnegotiable by other sections of the Act, *e.g.*, section 7117(a). Nor do I conclude that the deference owed the Authority's interpretation of its enabling statute under *Chevron* informs our decision in this case. What is determinative is not the Authority's interpretation of the statute, but the interpretation of Requirement 4, a regulation of OPM whom we owe deference here, not the Authority.

In sum, I find this case not fundamentally different than *Local 2782.* In my view, we still await the day when a "proposal concerns a subject matter that Congress clearly intended to be 'appropriate' for bargaining," 803 F.2d at 742, yet runs afoul of a government-wide rule or regulation.

I respectfully dissent from the majority's conclusion that this is that regulation.