# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued May 6, 2005            Decided June 17, 2005
                                Reissued August 17, 2005

No. 04-1224

NATIONAL FEDERATION OF FEDERAL EMPLOYEES, FD-1,
IAMAW, LOCAL 951 AND
NATIONAL FEDERATION OF FEDERAL EMPLOYEES, FD-1,
IAMAW, LOCAL 2152,
PETITIONERS

v.

FEDERAL LABOR RELATIONS AUTHORITY,
RESPONDENT

———

On Petition for Review of an Order of the
Federal Labor Relations Authority

———

*Susan T. Grundmann* argued the cause and filed the briefs
for petitioners.

*Gregory O'Duden*, *Elaine D. Kaplan*, *Julie M. Wilson*,
*Mark D. Roth*, and *Judith D. Galat* were on the brief for *amici
curiae* National Treasury Employees Union, et al. in support of
petitioners. *Barbara A. Atkin* entered an appearance.

*William E. Persina*, Attorney, Federal Labor Relations
Authority, argued the cause for respondent. With him on the

brief were *David M. Smith*, Solicitor, and *William R. Tobey*, Deputy Solicitor.

Before: EDWARDS, HENDERSON, and TATEL, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: In this case, the Federal Labor Relations Authority ruled that a federal agency had no obligation to bargain over two union proposals calling for disclosure of certain documents. According to the FLRA, the proposals interfere with the federal agency's statutory "right to assign work" because the agency would have to assign personnel to review the many documents sought by the union. But longstanding FLRA precedent makes clear that union proposals interfere with the right to assign work only when they specify which employees are to perform the task at issue—something neither proposal here does. Because the ruling in this case completely ignores this precedent and unreasonably limits the statutory obligation to bargain, we grant the union's petition for review.

## I.

The Federal Service Labor-Management Relations Statute, 5 U.S.C. § 7101 et seq., ("FSLMRS") requires federal agencies and unions representing federal employees to bargain in good faith, *id*. § 7117. When in the course of bargaining a union submits a proposal to an agency, the two sides ordinarily negotiate until they agree or reach impasse. In the latter event, either may refer the issue to the Federal Services Impasses Panel, which, should it fail to prompt settlement, can "take whatever action is necessary." *Id*. § 7119(b)-(c).

Though agencies have a duty to bargain, this duty does not

extend to all matters. In the FSLMRS, Congress reserved certain rights to management, *see id*. § 7106(a), including the right "to assign work . . . and to determine the personnel by which agency operations shall be conducted," *id*. § 7106(a)(2)(B). If an agency declines to bargain over a proposal because it believes the proposal interferes with the right to assign work (or falls outside the duty to bargain for any other reason), the union may appeal to the Federal Labor Relations Authority ("FLRA"). *Id*. § 7117(c).

This case arose when petitioners, two locals of the National Federation of Federal Employees that represent rangers employed by the Bureau of Land Management ("BLM"), received notice that BLM planned to evaluate the rangers' eligibility for a salary premium. BLM and the locals began negotiations concerning this evaluation, and the locals proposed that BLM provide them with various evaluation-related documents. According to BLM—and the unions do not disagree—the proposals would require it to produce approximately 10,000 documents, some 9,800 of which would have to be sanitized in order to avoid disclosing confidential law enforcement information.

Asserting that the proposals interfered with its statutory right to assign work, BLM declared them non-negotiable, and the locals appealed to the FLRA. With one member dissenting, the FLRA agreed with BLM. *Nat'l Fed'n of Fed. Employees, Local 951*, 59 F.L.R.A. 951 (2004) ("*NFFE, Local 951*"). According to the FLRA, "[t]he Authority previously has found that proposals and provisions that require management to perform certain tasks affect the right to assign work." *Id*. at 953. The proposals at issue here would have such an effect, the FLRA reasoned, because "the Agency would have to remove several employees from their regularly assigned duties for several weeks to collect, collate and redact approximately 9,800 documents." *Id*. (internal quotation marks omitted). During that

period, BLM "would be precluded from assigning to those employees their regularly assigned duties." *Id*. at 954. Acknowledging that it had previously rejected declarations of non-negotiability made with respect to proposals that required agency personnel to implement, the FLRA asserted that those proposals "simply" called for the agency to "take a ministerial act in implementing a negotiable procedure that was not self-effectuating or take some action in addition to that already taken as part of management's general duties." *Id*. The FLRA also stated that "[w]e are unaware of any precedent . . . in which the Authority has directed parties to negotiate over a proposal that required an agency to collect, collate and redact nearly 10,000 documents." *Id*.

According to the dissent, the majority created "new law that is flatly inconsistent with precedent the majority refuses to even acknowledge." *Id*. at 955. "The Authority has long and consistently held that proposals are not inconsistent with the right to assign work merely because they require management to take certain actions," the dissenter explained. *Id*. The FLRA has, moreover, "never found an exception to this principle based on the number of documents that a proposal would require management to provide." *Id*.

The locals now petition for review.

## II.

Pursuant to the FSLMRS, we review FLRA decisions under the APA's arbitrary and capricious standard. 5 U.S.C. § 7123(c) (incorporating by reference the provisions of 5 U.S.C. § 706). Of particular relevance to this case, agencies act arbitrarily and capriciously when they "ignore [their] own relevant precedent." *B B & L, Inc. v. NLRB*, 52 F.3d 366, 369 (D.C. Cir. 1995) (per curiam). Of course, agencies may depart from precedent, but "an agency changing its course must supply a reasoned analysis indicating that prior policies and standards are being deliberately

changed, not casually ignored." *Greater Boston Television Corp. v. FCC*, 444 F.2d 841, 852 (D.C. Cir. 1970). In two recent cases, we applied this fundamental principle of administrative law to the FLRA itself, remanding its decisions because it had disregarded its own precedent without explanation. *See Nat'l Treasury Employees Union v. FLRA*, 399 F.3d 334 (D.C. Cir. 2005); *Nat'l Fed'n of Fed. Employees, Local 1442 v. FLRA*, 369 F.3d 548 (D.C. Cir. 2004). We do so again here.

The FLRA has held that the right to assign work includes "the authority to determine the particular duties to be assigned [to an employee], when work assignments will occur, and to whom or what positions . . . duties will be assigned." *Nat'l Treasury Employees Union*, 53 F.L.R.A. 539, 567 (1997) (citing *Am. Fed'n of Gov't Employees, Local 3392*, 52 F.L.R.A. 141, 143 (1996)). Consistent with this understanding, the FLRA has found interference with the right to assign work when a proposal would assign tasks to specific individuals or specific offices. *See, e.g., Nat'l Treasury Employees Union*, 53 F.L.R.A. at 567-68 (proposal would require Office of Personnel to make certain hiring decisions); *Nat'l Fed'n of Fed. Employees, Local 1437*, 35 F.L.R.A. 1052, 1060-61 (1990) ("*NFFE, Local 1437*") (proposal would require manager to select one member of panel from preset list). The FLRA has also found interference when a proposal would prohibit identified employees from performing specific tasks, *e.g., Nat'l Fed'n of Fed. Employees, Local 1482*, 39 F.L.R.A. 1168, 1180-82 (1991) ("*NFFE, Local 1482*") (proposal would bar assignment of unit employees to evaluate each other), *vacated and remanded as to other matters sub nom. U.S. Dep't of Defense, Defense Mapping Agency, Louisville, Ky. v. FLRA*, 955 F.2d 764 (D.C. Cir. 1992), and when it would limit when a particular task may be done, *see, e.g, Nat'l Treasury Employees Union*, 17 F.L.R.A. 379, 380 (1985) (proposal would, in some circumstances, require I.R.S. management to delay certain audits), *vacated and remanded as to other matters*

6

*sub nom. Nat'l Treasury Employees Union v. FLRA*, 810 F.2d 1224 (D.C. Cir. 1987). By contrast, the FLRA has found no interference with the right to assign work when a proposal, though requiring the agency to perform a particular task, does not specify which employees will perform the task or when it may be performed. *See, e.g.*, *Nat'l Treasury Employees Union*, 43 F.L.R.A. 1279, 1293-94 (1992) ("*NTEU*") (proposal would require managers evaluating job candidates to document basis for ratings given, but would allow agency to choose who conducts evaluations); *Am. Fed'n of Gov't Employees, Local 1759*, 29 F.L.R.A. 261, 263 (1987) ("*AFGE, Local 1759*") (proposal would require unspecified employee to staff desk where other employees could check personal items); *Ill. Nurses Ass'n*, 27 F.L.R.A. 714, 727-28 (1987) (proposal would require an unspecified agency employee to review documents submitted by union).

The FLRA's explanation of these and like decisions confirms that whether a proposal interferes with the right to assign work turns on whether the proposal specifies which employees will (or will not) perform a task or when employees may perform the task. In one decision, for instance, rejecting an agency claim that a proposal interfered with the right to assign work, the FLRA explained that the proposal left "the Agency . . . total discretion to assign" the task at issue to any employee. *Ill. Nurses Ass'n*, 27 F.L.R.A. at 727. In another decision, a proposal fell "within the duty to bargain" because it did "not prescribe any specific duties to be performed by" specific individuals. *AFGE, Local 1759*, 29 F.L.R.A. at 263. According to the FLRA, it "has consistently held that when a proposal requires that a particular employee or a particular office perform a designated duty, it . . . interferes with management's right to assign work." *NFFE, Local 1437*, 35 F.L.R.A. at 1060.

In this case, even though nothing in the union proposals specifies which BLM employees are to process the documents,

the FLRA found the proposals non-negotiable, explaining that "proposals and provisions that require" agency personnel to perform a task "affect the right to assign work." *NFFE, Local 951*, 59 F.L.R.A. at 953. Echoing the dissent, the locals argue that this conclusion runs directly counter to FLRA precedent. By suggesting that a proposal could interfere with the right to assign work just because it requires agency personnel to implement, the locals add, the decision here "expands the long-standing . . . test" for interference with the right without announcing "a change in [the FLRA's] analysis." Petitioner's Br. at 12. We agree with the locals.

The FLRA has repeatedly rejected the argument that it now embraces: that proposals burden the right to assign work whenever they would require work by agency personnel to implement. In *Illinois Nurses Ass'n*, for instance, the FLRA noted that if accepted, such an argument "would mean that any proposal which required management to take some action . . . would interfere with management's right to assign work." 27 F.L.R.A. at 727. "Construed in this way," the FLRA continued, management's right to assign work "would completely nullify the duty to bargain because no obligation of any kind could be placed on management by negotiation." *Id*. at 727-28. The FLRA reiterated this point in *National Federation of Federal Employees, Local 2099*, 35 F.L.R.A. 362 (1990), which addressed an agency's claim that requiring evaluation of candidates for promotion by panels, as opposed to individuals, would affect management rights. "To conclude that a proposal interferes with management's right to assign work simply because it requires an agency to take some action would completely nullify the obligation to bargain because no obligation of any kind could be placed on management through negotiations." *Id*. at 366. In still another case, the agency claimed that the task proposed by the union—documentation of negative employee appraisals—would interfere with the right to assign work, emphasizing that the requirement would constitute

an "onerous" burden. *Nat'l Treasury Employees Union*, 47 F.L.R.A. 705, 715 (1993). The FLRA rejected this argument, again explaining that proposals "do not directly interfere with the right to assign work merely because they [would] obligate the agency to assign someone to implement" them. *Id*. at 719.

Ignoring these cases, the FLRA now claims that it has always viewed proposals that would require work by agency personnel as interfering with the right to assign work unless the tasks involved were either "ministerial" or incidental to other work the employees performed. *NFFE, Local 951*, 59 F.L.R.A. at 954. The cases the FLRA cites, however, lend no credence to this revisionist view. In *Professional Airways Systems Specialists*, 59 F.L.R.A. 25 (2003), which the FLRA cites for the proposition that it has previously found interference when an agency must assign unspecified employees to perform a task, the union never disputed that its document-related proposals interfered with the right to assign work, so the Authority had no need to decide whether they in fact caused such interference. *Id*. at 28. In support of its contention that it has found proposals requiring work by agency employees to be negotiable only where the work at issue was either "ministerial" or incidental to some other task, the FLRA cites three decisions, *NTEU*, 43 F.L.R.A. at 1293-94, *Patent Office Professional Ass'n*, 47 F.L.R.A. 954, 958-59 (1993) ("*POPA*"), and *American Federation of Government Employees*, 43 F.L.R.A. 836, 844-45 (1991). But two of these cases—*NTEU* and *POPA*—rest explicitly on the fact that nothing in the proposal specified which employees must perform the tasks involved. In *NTEU*, the FLRA held that "because the proposal does not impermissibly specify who will implement the procedure," it "does not . . . interfere with management's right to assign work." 43 F.L.R.A. at 1294. In *POPA*, because the union's proposal left "the Agency . . . free . . . to designate whomever it chooses to" perform the task, the FLRA found "no basis on which to conclude that" it "limits the Agency's right to assign work." 47

F.L.R.A. at 958-59. Although the third case, *American Federation of Government Employees*, does note that the proposal was procedural and consistent with existing regulations, 43 F.L.R.A. at 845, nothing in the decision suggests that interference with the right to assign work occurs where, as here, the proposal does not specify which employees will perform the tasks at issue.

In its opinion here, the FLRA says that in no decision has it "directed parties to negotiate over a proposal that required an agency to collect, collate and redact nearly 10,000 documents." *NFFE, Local 951*, 59 F.L.R.A. at 954. Elaborating in its brief, the FLRA insists that "[i]t was eminently reasonable for the Authority to conclude that the conceded massive and unprecedented redirection of staff resources that would necessarily result from implementing these proposals would affect the Agency's ability to determine the duties to be assigned to its personnel." Respondent's Br. at 15. Yet in every one of the cases discussed above where the FLRA found no interference with the right to assign work, the proposals at issue would have required "redirection of staff resources." *See supra* at 6-9. Equally important, under FLRA precedent, the burden on agency personnel has no bearing on whether a proposal implicates the right to assign work. The FLRA cites no case, nor have we found one, where the magnitude of the burden influenced the Authority's analysis. Indeed, as we indicated above, the FLRA ruled in one case that the union proposal did not interfere with the right to assign work even though the Agency had claimed that the proposal would impose an "onerous" drain on staff resources. *Nat'l Treasury Employees Union*, 47 F.L.R.A. at 715, 719. Because a proposal's burden has no bearing on whether the right to assign work has been interfered with, it makes no difference whether the proposals at issue in this case would require BLM to "collect, collate and redact . . . 10,000 documents," *NFFE, Local 951*, 59 F.L.R.A. at 954, or ten documents.

In sum, though the FLRA must either follow its own precedent or "provide a reasoned explanation for" its decision to depart from that precedent, *Local 32, Am. Fed'n of Gov't Employees v. FLRA*, 774 F.2d 498, 502 (D.C. Cir. 1985), here it has done neither. Contrary to the FLRA's position, past decisions have found interference with the right to assign work *only* when the proposal would restrict who performs a task or when a task may be performed, and with good reason. In passing the FSLMRS, Congress sought "to promote collective bargaining and the negotiation of collective bargaining agreements," *Dep't of the Navy, Marine Corps Logistics Base, Albany, Ga. v. FLRA*, 962 F.2d 48, 59 (D.C. Cir. 1992), and the Chairman of the Subcommittee on Civil Service, a key supporter of the compromise management rights provisions Congress adopted, *see Office of Personnel Mgmt. v. FLRA*, 864 F.2d 165, 168 (D.C. Cir. 1988), explained that these provisions constitute "narrow exception[s] to the general obligation to bargain," 124 Cong. Rec. 29,187 (1978) (statement of Rep. Clay). *See also id.* at 29,198 (statement of Rep. Ford) (explaining that management rights provisions should "be narrowly construed"). While FLRA precedent comports with this understanding of the statute's purpose and management rights provisions, the Authority's conclusion that the proposals here interfere with the right to assign work does not. After all, "[i]f an [agency] was released from its duty to bargain whenever" a proposal requires work by agency personnel, or even just when implementation of the proposal would cause "hardship, the [agency's] duty to bargain would practically be non-existent in a large proportion of cases." *Am. Fed'n of Gov't Employees v. FLRA*, 785 F.2d 333, 338 (D.C. Cir. 1986) (per curiam). In this case, because nothing in the union proposals would require any particular BLM employees to process the documents, the FLRA should have directed BLM to present its concerns about the proposals' burden at the bargaining table and, should it fail to resolve those concerns satisfactorily, to bring the dispute to the Impasses

Panel.  By instead finding that the proposals interfere with the right to assign work, the FLRA has produced a result precisely opposite to the one Congress intended:  it has restricted collective bargaining and converted the management rights provisions from "narrow exception[s]" into major obstacles to collective bargaining.

## III.

We grant the petition for review and remand to the FLRA with instructions to direct BLM to bargain over the union proposals.

*So ordered.*